UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LYNN T. PASLEY,

        Plaintiff,               Case No. 1:07-cv-583

v.                                       Honorable Janet T. Neff

(UNKNOWN) OLIVER,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. On July 6, 2007, this Court ordered service of Plaintiff's complaint on Defendant Corrections Officer (unknown) Oliver. On September 4, 2007, Defendant filed a motion for summary judgment (docket # 15) on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed a response with attachments (docket # 19) on or about October 5, 2007. Upon review, I recommend that Defendant's motion for summary judgment based on Plaintiff's failure to exhaust his available administrative remedies be denied.

### Applicable Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM

MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### Facts

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at Huron Valley Correctional Facility, though the actions he complains of occurred while he was housed at the Earnest C. Brooks Correctional Facility (LRF). In his *pro se* complaint, he sues LRF Corrections Officer Scott Oliver.[1]

Plaintiff alleges that, while he was housed at LRF, he was in contact with Defendant at least four days of each week. According to Plaintiff, Defendant Oliver made it his routine to harass and intimidate Plaintiff. Plaintiff alleges that he was advised by the housing unit manager to attempt to avoid Defendant and to keep his composure. On November 5, 2005, Defendant Oliver wrote an allegedly false and fabricated work report against Plaintiff, despite the fact that Oliver was not Plaintiff's supervisor and had not observed his work performance. Plaintiff complained about the false work report to the classification director, who simply placed the report in Plaintiff's file. Plaintiff then asked his supervisor, Kevin Laninga, to complete an evaluation. Laninga evaluated Plaintiff as being a good worker, scoring him above average.

On December 22, 2006, Plaintiff filed an institutional grievance, LRF-07 01-0005-2b, against Defendant. On January 24, 2007, Assistant Deputy Warden Smith investigated the grievance

---

[1] In the complaint, Plaintiff did not include Defendant Oliver's first name. According to the acknowledgment of the receipt of summons and complaint (docket #14) and all subsequent pleadings, the Defendant is now acknowledged to be Scott Oliver.

and concluded that Defendant had no authority to write the report. Smith ordered the report removed from Plaintiff's file. Smith, however, allegedly failed to address Plaintiff's overall complaints of harassment and intimidation by Oliver. Plaintiff appealed the grievance through Step III. On April 20, 2007, the Step III grievance affirmed the responses at Steps I and II, concluding that, because the record had been corrected, the grievance was considered resolved. (Def. Mot. for Sum. J., Ex. 2.)

According to the complaint, on January 27, 2007, Defendant conducted a retaliatory shake-down of Plaintiff's cell. Noticing a sealed envelope directed to the Step II grievance coordinator, Defendant opened the mail and began reading Plaintiff's grievance against Defendant. Later that same day, Defendant allegedly tried to get another inmate to falsely charge Plaintiff with assault.

Plaintiff filed grievance LRF-0702-0213-17i on February 1, 2007, complaining that Defendant opened and read his sealed grievance appeal arbitrarily and in retaliation for Plaintiff's filing of a prior grievance against Defendant. (Def. Ex. 4.) On January 31, 2007, Plaintiff filed grievance LRF-0702-0214-17i, alleging that Defendant had threatened Plaintiff and had attempted to get another inmate to falsely accuse Plaintiff of assault, again in retaliation for Plaintiff's filing of a prior grievance against Defendant. (Def. Ex. 5.) Both grievances were denied at Step I on February 15, 2007. (Def. Ex. 4, 5.)

At approximately this time, Plaintiff was transferred to Ionia Maximum Correctional Facility (ICF). He attempted to obtain Step II grievance forms at ICF, but was informed that he needed to request them from LRF Grievance Coordinator Minnerick. (Compl. Ex. L; Pl. Resp. to Mot. for Sum. J., Ex. F.) Plaintiff sent a kite to Minnerick on February 28, 2007, asking for the Step II forms. (Compl. Ex. L; Pl. Resp. to Mot. for Sum. J., Ex. F.) Minnerick avers that he sent

4

the forms on March 5, 2007, but that he never received a completed Step II form from Plaintiff. (Def. Ex. 3, Minnerick Aff. ¶¶ 3-6.) Plaintiff asserts, however, that he did not receive the forms and was told by ICF Assistant Resident Unit Supervisor Kula that no Step II grievance forms were included in Minnerick's response. Instead, Minnerick's response included only a copy of Plaintiff's request with a notation from Minnerick that Plaintiff should file a different grievance directly to Step III. (Compl. Ex. L; Pl. Resp. to Mot. for Sum. J., Ex. F.) As a result, Plaintiff avers that he was forced to proceed directly to Step III. He alleges in his complaint that on April 13, 2007, he received a Step III response, denying his grievance because he did not complete Step II of the grievance process. (Resp. to Mot. for Sum. J. at 9; Compl. ¶ 45, Pl.) Plaintiff further avers that his filing at Step III is proved by the stamp on his Step I grievances indicating that the grievances had been received by the Grievance and Appeals Division of the MDOC. (Resp. to Mot. for Sum. J. at 9 & Ex. E.)

In his complaint, Plaintiff alleges that Defendant violated Plaintiff's rights under the Eighth Amendment by harassing and intimidating Plaintiff, by falsifying a negative work report, and by attempting to convince another prisoner to file false charges against Plaintiff. Plaintiff also alleges that Defendant harassed him and attempted to get another prisoner to charge him with assault in retaliation for filing a grievance about the false work report.

## Discussion

I.  Standard of Review

Defendant claims that he is entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532

5

U.S. 731, 733 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

In interpreting the PLRA, it is appropriate to look for guidance to the substantively similar exhaustion rules applicable in habeas cases. *Woodford*, 126 S. Ct. at 2384. In the habeas corpus context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "To 'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies . . ." *Id.* at 848 (citation omitted; emphasis in original). In habeas, the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default. *Woodford*, 126 S. Ct. at 2387. To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim.

6

*See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003).

Under the procedural default component of § 1997e(a), an inmate's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 126 S. Ct. 2978 (2006); *Spruill v. Gillis*, 372 F.3d 218, 222 (3rd Cir. 2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations.") Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the Federal Constitution or the intended purposes of § 1997e(a). *See Spruill*, 372 F.3d at 232.

II. MDOC Grievance Policy

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[2], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for

---

[2] The MDOC recently amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III. *Id.* at ¶S. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.*

III.   Grievances

A.   **Grievance Number LRF-0701-0005-2b**

As previously discussed, Plaintiff filed Grievance LRF-0701-0005-2b alleging that Defendant submitted a false work report against Plaintiff. Plaintiff pursued the grievance through Step III, and the grievance was reviewed on the merits at all three steps. Defendant contends, however, that Plaintiff failed to properly exhaust his available administrative remedies because he did not attempt to discuss the matter with Defendant Oliver before filing the grievance, as required by PD 03.02.130, ¶ R, and did not file the Step I grievance within the five days provided in PD 03.02.130, ¶ X.

Defendant's argument is without merit. Regardless of the accuracy of Defendant's assertions, Plaintiff's grievance was not rejected at any step on the grounds that Plaintiff had failed either to first confer with Oliver or to file his Step I grievance in a timely fashion. Instead, Plaintiff's grievance was addressed on the merits at all three steps of the grievance process. While Plaintiff arguably may have failed to meet one of the requirements for filing his grievance, prison officials did not rely on the default by rejecting the grievance as untimely. *See Johnson*, 418 F.3d at 1159; *Spruill*, 372 F.3d at 222; *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (the doctrine of procedural default is applicable only where the rule is actually relied upon by the state courts). When an administrative agency addresses an inmate's grievance on the merits, then the agency has found that the inmate satisfied the required critical procedural rules. *See Woodford,* 126 S. Ct. at 2385 (if the agency addresses a grievance on the merits, then the inmate has "us[ed] all steps that the agency holds out, and do[ne] so properly.")

### B. Grievance Nos. LRF-0702-0214-17i and LRF-0702-0213-17i

Defendant first alleges that grievances LRF-0702-0214-17i and LRF-0702-0213-17i are not legible. He therefore asks the Court to look at the Step I grievance response, which suggests that the grievances failed to allege that Oliver's actions were retaliatory. Defendant's argument is frivolous. Although the copy of the Step I grievances submitted with the complaint are not legible, the copies attached by Defendant to his motion are completely legible. (Def. Ex. 4, 5.) Both grievances clearly allege that Defendant's conduct was both arbitrary and retaliatory.

Defendant next argues that neither grievance was exhausted because Plaintiff failed to submit the grievance through all three steps of the grievance process. As previously discussed, Plaintiff has averred that, at the time the Step II grievance needed to be filed, he had been moved to a different correctional facility. He, therefore, was required to request the Step II forms by way of a letter mailed to LRF Grievance Coordinator Minnerick. Minnerick avers that the grievance forms were sent to Plaintiff on March 5, 2007. Plaintiff, however, avers that Minnerick's response was returned to Plaintiff without the forms. Plaintiff, therefore, asserts that he was prevented from filing a Step II grievance response. He alleges that he attempted to proceed directly to Step III by submitting a copy of the Step I grievance form to Step III. Plaintiff's exhibits demonstrate that the form was received by the Grievance and Appeals Division at Step III. (Pl. Resp. to Mot. for Sum. J. at 9 & Ex. E.) The grievance, however, was rejected at Step III for failure to complete the second step of the grievance process. (Compl., ¶ 45; Pl. Resp. to Mot. for Sum. J. at 9.)

Although Plaintiff may technically have failed to comply with requirements of the MDOC grievance policy, his averments and attachments are sufficient to raise a question of fact as to whether all steps of the process actually were "available" to him within the meaning of 42 U.S.C. 1997e(a). *See Nixon v. Sanders*, No. 06-1013, 2007 WL 2349344, at *1 (8th Cir. Aug. 17, 2007)

(citing *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (prisoner's allegations that prison officials denied his requests for grievance forms could raise inference that he was prevented from utilizing prison's remedies; remedy that prison officials prevent prisoner from utilizing is not "available" under § 1997e(a)); *see also Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir, 2004) (refusal to give prisoner grievance forms can render administrative grievance system unavailable); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) (same); *Muhammad v. Gilmer Fed. Corr. Inst.*, No. 3:05-CV-91, 2007 WL 2815634, at *5 (N.D. W. Va. Sept. 25, 2007); *McDonald v. Schuster*, No. CV-02-1357-PHX-SRB, 2006 WL 411062, at *4 (D. Ariz. Feb. 16, 2006). As a consequence, Defendant is not entitled to summary judgment on his affirmative defense. *See Arnett*, 281 F.3d at 561.

### Recommended Disposition

For the foregoing reasons, I recommend that Defendant's motion for summary judgment based on Plaintiff's failure to exhaust his available administrative remedies (docket #18) be denied.

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: March 3, 2008

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).